FILED

2010 May-05  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KIMBERLY A. MYERS,

      Plaintiff,

vs.                         CASE NO. CV-09-J-1285-S

BELLSOUTH TELECOMMUNICATIONS,
INC.,

      Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 17) and evidentiary submissions in support of its motion. The plaintiff submitted a brief in opposition and evidentiary submissions in support thereof (doc. 27), to which the defendant thereafter filed a reply (doc. 32). The court has reviewed the motion, the memoranda of law and the evidentiary submissions.

## I.  PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint and an amended complaint (docs. 1 and 7) alleging that the defendant discriminated against her, allowed a co-employee to harass her, and retaliated against her, all in violation of the Americans with Disabilities Act of 1990 ("ADA"),  42 U.S.C. § 12101, *et seq*.[1]

---

[1]Although the plaintiff states that her claims are also brought pursuant to "42 U.S.C § 1981a and the ADAAA," the plaintiff states no causes of action related to those statutes. The

Having considered the pleadings and arguments of the parties, as well as the relevant law, the court finds as follows:

## II.  FACTUAL BACKGROUND

Considering the evidence before the court in the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff worked for the defendant in various service representative positions from February 15, 1999, until she was terminated due to excessive absences on May 30, 2008.  Complaint, ¶¶ 4, 6; plaintiff depo. at 64.  The plaintiff alleges she suffers from Environmental Illness, which results in rhinitis and migraine headaches from exposure to certain airborne irritants.  Amended complaint, ¶ 7.  The plaintiff further asserts that this condition is a "qualified disability" as that term is defined under the ADA, and that she notified the defendant of her condition in April 2006.  Amended complaint, ¶¶ 11-12.

The plaintiff acknowledges that the defendant accommodated her requests to be moved to an area of the building that did not having offending smells, but faults the defendant for excusing only some of the absences she attributes to her condition.  Amended complaint, ¶¶ 13-14, 16.  The plaintiff alleges that a co-worker intentionally harassed her by exposing her to "poignant cologne

_____

amended complaint, filed July 16, 2009, did not add or alter any causes of action.

causing her extreme discomfort and pain." *Id*, ¶ 25.  She alleges that he

intentionally tried to harm her just to be mean.  Plaintiff depo. at 48.  She asserts

her supervisors witnessed this harassment, but did nothing.  Amended complaint, ¶

26.  She has not worked since her termination.  Plaintiff depo. at 42.

The plaintiff began experiencing migraine headaches in 2004.  Plaintiff

depo. at 35.  Beginning in 2006, the plaintiff experienced problems with fumes

from new carpeting when she was working on the fourteenth floor in the resale

group, and was moved to a different group on a different floor to accommodate her

sensitivity to it.  Plaintiff depo. at 37-39, 70.  The department to which she was

moved, QCG, eventually moved back to the fourteenth floor, but defendant had

the new carpet professionally cleaned before she was moved back to that floor.

*Id*., at 38, 101.  The defendant also halted the installation of more carpeting in the

building due to the smell from it.  *Id.* at 101.  She had sinus surgery in November

2006 to help get her migraines under control.  *Id.* at 28-29; 161.  She remained

migraine free until September 2007.  *Id.* at 29-30. Being placed on the right

medication helped as well.  *Id.*

After the plaintiff was moved to QCG, she was fine until sometime in the

summer of 2007 when new people were brought into the group, including Gerald

Estelle.  Plaintiff depo. at 102-103.  The plaintiff had problems with Estelle's

cologne, which she brought to her supervisor's attention in September or October

2007.[2]   *Id.* at 50, 101, 110; Ward depo. at 58-59.   She asked to be moved to

another group, but Trey Toups, her manager, told her he was not going to move

her but would speak to Estelle.[3]   Plaintiff depo. at 49, 104.   The plaintiff overheard

Toups tell Gerald Estelle to reduce the amount of cologne he was wearing because

someone was allergic to it.   *Id.* at 105.   Although Toups never mentioned the

plaintiff by name, she thinks everyone knew it was her because she had been

moved from the fourteenth floor and had been wearing a mask to try to block the

smell of the carpet.   Plaintiff depo. at 105-106.   However, she does not know that

Estelle ever saw her in the mask, because he did not work on the fourteenth floor

---

[2]In her deposition, the plaintiff stated she thought she was put in Toups' group in June 2007.  Plaintiff depo. at 103.  In her affidavit, she asserts she immediately noticed Estelle's cologne and asked Crystal Harris not to put her in Toups' group due to the smell of Estelle, but this request was denied.  Plaintiff affidavit, ¶¶ 21-24.  The plaintiff stated in her deposition that she was in Crystal Harris' group when new people were brought in, including Estelle.  Plaintiff depo. at 102.  She testified "they swapped us all up and I went to Trey Toups' group and they just mixed us all up."  Plaintiff depo. at 102.  According to Toups, he took over Crystal Harris' role as supervisor of QCG.  Toups depo. at 28.  Patricia Ward, the call center administrator, stated her records reflected that the plaintiff was moved to Toups' group in July 2007 to balance the teams.  Ward depo. at 60.

[3]By affidavit, the plaintiff testified she first spoke with Toups about Estelle's cologne in September or October 2007.  Plaintiff affidavit, ¶ 29.  In her deposition, she specifically stated that she spoke with Toups about this issue for the first time on October 9 or 10, 2007.  Plaintiff depo. at 110.  In her affidavit, the plaintiff asserts that on October 9, 2007, Estelle came into her work area and stood around doing nothing for almost an hour, and that Crystal Harris saw Estelle standing near plaintiff's desk, wearing heavy cologne and doing no work.  Plaintiff affidavit, ¶ 31.

when the carpet was installed.   *Id.* at 106.

Because Toups did not move plaintiff, in late October 2007 she went to Crystal Harris while Toups was on leave, and again asked to be moved.[4]  Plaintiff depo. at 50, 107-108, 111.  The plaintiff also brought a letter from her physician explaining her problems with smells.  *Id.* at 110-111.  Crystal Harris received permission from Mary Ann Hollingsworth to move the plaintiff.  *Id.* at 69.  However, moving back to Harris' group did not help because Estelle started coming over there.  *Id.* at 111-113.  In November 2007 the plaintiff met with manager Judy Norris and Crystal Harris to ask that Estelle be ordered to reduce his cologne, but was told this could not be done.  Plaintiff affidavit, ¶¶ 41-42.

According to the plaintiff, there was no need for interaction between employees in the various groups, or even within one group, to perform their jobs effectively. Plaintiff depo. at 71-72.  Rather, most of the interaction between employees was for personal reasons.  *Id.* at 73.  However, plaintiff admits that on special projects, they sometimes had to work together.  *Id.* at 74.  Additionally, face to face contact was sometimes required in their everyday jobs.  *Id.* at 79.

Because Estelle did not stay at his own desk, which plaintiff asserts would

---

[4]After the plaintiff moved back to Crystal Harris' group, the plaintiff never complained to Toups about Estelle again.  Toups depo. at 48.

have alleviated her problems, plaintiff asked to be moved again, even further away from Estelle, in May 2008.  Plaintiff depo. at 113-114, 117, 121.  The plaintiff told Shelley Miller, her manager, that wherever she was moved, Estelle followed her. *Id.* at 121.  She claimed he would find anybody he could and stand as close as he could get to her to speak with someone else.  *Id.*  The plaintiff lacked the seniority for her first choice of moves, but her request was granted and she was moved back to QCG complex, which was the farthest from Estelle.  *Id.* at 117-118, 122-123. The plaintiff stated that because of her attendance, she could not win a bid to be placed in a wholly different department.  *Id.* at 125, 128.  Estelle was aware that she was moved farther and farther away from him because of her "reactions to the scents."  Estelle depo. at 14.

At the time he was asked to wear less cologne, he did not know that his cologne was affecting the plaintiff.  Estelle depo. at 19-20.  However, she was moved within several days of Toups speaking to him, so he knew she was the one who complained.  Estelle depo. at 19, 21.  Estelle did not change the amount of cologne he wore after Toups approached him.  *Id.* at 21.

The plaintiff asserts that shortly thereafter, Estelle showed up, claiming he had to work to do with people near her, and stood there for an hour.  Plaintiff depo. at 123, 151-152.  She does not know if he actually had a work reason to be

there or not.  *Id.* at 126.  She testified that he never sat at his desk, but was standing near her all day long, perhaps three or three and a half hours a day.  *Id.* at 157.  However, the plaintiff never went to her supervisor and said that Estelle was standing near her doing nothing, nor asked that Estelle remain in his seat, because "it's like beating a dead horse."[5]  *Id.* at 158-159.  She also made no other requests to be moved.  *Id.* at 127-128.

The plaintiff never directly asked Estelle to stop wearing his cologne.  Plaintiff depo. at 126.  She asserts Estelle harassed her "with his presence with his cologne" and "being where he didn't need to be."  *Id.* at 129-130.  However, she never told any manager that she thought Estelle was retaliating against her for her complaints about his cologne.  *Id.* at 159.   By affidavit, the plaintiff asserts that managers in QCG "all knew about Mr. Estelle's strong cologne and could smell it on the floor in the places he had been."[6]  Plaintiff affidavit, ¶ 49.  In fact, the plaintiff asserts that Crystal Harris' work station was close to hers, so that "it would not of (sic) been possible for her not to smell Mr. Estelle when he was

---

[5]In March 2008 the plaintiff began seeing a counselor for depression because she was overwhelmed by "what all was going on with BellSouth because I was being harassed by Gerald Estelle and no one at BellSouth would do anything to help me with it, and my headaches started back again..."  Plaintiff depo. at 16.

[6]The court notes the hearsay nature of plaintiff's testimony regarding what managers in QCG knew and what they could smell.

lingering around my work area." Plaintiff affidavit, ¶ 50.

Defendant used a four step, progressive discipline process, for work infractions, including attendance issues. Declaration of Patricia Ward, ¶ 8; plaintiff depo. at 81. The plaintiff received each of those four disciplinary steps leading up to and including her termination. *Id.* The plaintiff received a formal counseling for attendance in August 2005 and a formal warning for attendance in November 2005. Plaintiff depo. at 82; defendant exhibits 4 and 5 to plaintiff deposition. The plaintiff agreed these disciplines were still in full force at the time of her termination. Plaintiff depo. at 82. Defendant agreed to reduce the term of the formal warning from 24 months to 12 months if she had no further unexcused absences. Plaintiff depo. at 82-83; defendant exhibit 6 to plaintiff deposition. However, due to further absences and unsatisfactory attendance, the plaintiff received a letter in lieu of suspension in August 2006. Plaintiff depo. at 83-84, defendant exhibit 7 to plaintiff deposition; declaration of Ward, ¶ 10.

The plaintiff was warned that further attendance issues would lead to termination. Plaintiff depo. at 85, 88. However, she was then given courtesy counseling sessions and warnings instead of being terminated. *Id.* at 88-89; Ward declaration, ¶ 10. In a May 2008 meeting, the plaintiff was informed that she already had 60 days of unexcused absences for the 2008 year. Plaintiff depo. at

90.  The plaintiff explained that she had been hospitalized, then her doctor had her off work, then she caught the flu from a waiting room.  *Id.* at 90.  Because of her excessive absences, the plaintiff was terminated on May 30, 2008.[7]  Defendant exhibit 8 to plaintiff deposition.

The plaintiff asserts that the various times she was tardy were all due to migraines, but concedes some times it was due to traffic.  Plaintiff depo. at 86-87.  She asserts all of her absences during the last three years of her employment were all migraine related and only caused by smells.  *Id.* at 92-93.

The plaintiff used, but ran out of FMLA eligibility, because she had not worked enough hours in the previous twelve months to maintain coverage.  Plaintiff depo. at 91, 100; Ward declaration, ¶ 11. The plaintiff also used all the short-term disability leave she had.  Plaintiff depo. at 100.  She knew all her absences were therefore unexcused.[8]  Plaintiff depo. at 92.

Although the plaintiff received a letter in lieu of termination in August

---

[7]The plaintiff's attendance records were submitted to the court as exhibit 5 to Ward's deposition.  In the 2005 calendar year, she was completely absent from work more than 50 days due to illness.  In 2006 she was again completely absent more than 50 days.  In 2007 she was not present at work due to illness 27 days, by the court's count.   For the calendar year 2008, the plaintiff was absent from work from January 7 until March 11; March 17 through April 24, and May 21 through May 23.

[8]From the evidence submitted, the court finds that only unexcused absences were counted against the plaintiff.  As long as she had disability leave and FMLA leave to take, she was allowed to take those days to cover her absences with no negative effects.

2006, and did not have problems with Gerald Estelle's cologne until 2007, she asserts that all of her unexcused absences were due to his cologne.  Plaintiff depo. at 92.  She testified that her migraines were under control prior to Estelle working near her, and that "if he had not come around or if they had just moved me like I asked and not told Mr. Estelle, we wouldn't be sitting in this room today."  *Id.* However, the plaintiff admits she was moved three times by management, once because of the carpeting and twice because of the cologne.  *Id.* at 100-101.

Each time she asked to be moved, she was moved.  Plaintiff depo. at 159. Yet she asserts if she had been accommodated the first time she had asked to be moved, and if Gerald Estelle had not been informed of her migraines, she would not have been off sick.  *Id.* at 140-141, 146.  According to the plaintiff, prior to being informed that a coworker was allergic to his cologne, Estelle stayed in his seat, but after learning someone had complained, he altered his workday to move around more.  *Id.* at 142-144, 146.  He would come to talk to whatever person was closest to her.  *Id.* at 151-152.  However, the plaintiff admits Estelle's group was changed, which changed his job duties and altered his need to move around the work space.  *Id.* at 145-146.

The plaintiff agreed that attendance is a requirement of any job.  Plaintiff depo. at 129.  She alleged that because of defendant's actions in not moving her,

she had to take absences which interfered with her ability to advance with the defendant.  *Id.* at 149.  However, she admits the letter in lieu of suspension, which was issued in August 2006, prior to her issues with Gerald Estelle, prevented her advancement anyway.  *Id.*  The plaintiff alleges that due to her disability, she was treated differently than her coworkers by being subjected to enormous amounts of cologne in an environment where she could not work.[9]  *Id.* at 161-162, 164.  She states "It almost became like I was being mocked by management."  *Id.* at 162.  Other than that she be moved, the plaintiff made no other requests for accommodations.  Plaintiff depo. at 165.

According to the plaintiff, Estelle altered his work day to move around more after he learned she was allergic to his cologne.  Plaintiff depo. at 141-142, 144.  She asserts that her supervisor, Crystal Harris, witnessed Estelle doing this, and never asked him to return to his own desk.  *Id.* at 156-157.  However, she never told any manager she thought Estelle was retaliating against her, and never asked that he be kept away from her area.  *Id.* at 159.

---

[9]Although the plaintiff knew that the defendant had an ethics hotline, the only call the plaintiff made to it was on May 21, 2008.  Plaintiff depo. at 130-131, defendant exhibit 9 to plaintiff deposition.  She reported in that complaint that she still came in contact with Estelle everyday because he would come to where she was.  *Id.* at 134-135.  However, she admitted that the complaint was not accurate because after she was moved in May 2008, he only came to where she was one time before she was fired.  *Id* at 135.  A finding of "no discrimination" was entered on that complaint.  Defendant exhibit 9 to plaintiff deposition.  The plaintiff also filed a union grievance when she was terminated, but later withdrew it.  Plaintiff depo. at 91.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth

12

specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## IV.  DISCUSSION

### A.  Discrimination

The ADA provides that no covered employer shall discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the plaintiff must show that (1) she has, or is perceived to have, a disability; (2) she is a qualified individual "which is to say, able to perform the essential functions of the employment position that [s]he holds ... with or without reasonable accommodations; and (3) she was discriminated against because of the disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir.2004) (quoting *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th

Cir.2002).  *See also Greenberg v. Bellsouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007).  The plaintiff must also show that the employer was aware of, meaning had "actual knowledge" of the disability and that the unfavorable employment decision was due to, or because of, the disability. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11th  Cir.2005), citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 800 (11th Cir.2000).

The defendant does not dispute that the plaintiff's migraines constitute a "disability" as that term is defined by the statute, so for purposes of this opinion the court assumes, without deciding, that the plaintiff can establish that she has a disability.[10]  The defendant instead disputes that plaintiff is a "qualified individual" because attendance was an "essential job function."[11]  Defendant's

---

[10]In its reply memorandum, the defendant states that, as recognized by the plaintiff, it has not sought summary judgment on the grounds that the plaintiff is not disabled, but does not waive any such arguments.  Defendant's reply at 1, n.1.

[11]Clearly, the law supports the contention that attendance may be an essential job function.  *See e.g., Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir.1994) (plaintiff was not "otherwise qualified" for his position where he was absent on a "sporadic, unpredictable basis"); *Tyndall v. National Education Centers*, 31 F.3d 209, 213 (4th Cir.1994) ("[I]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis."); *Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1584 (N.D.Ga.1994) ("[R]egular attendance and the ability to perform work are an essential function of any position under the Rehabilitation Act."); *Wimbley v. Bolger*, 642 F.Supp. 481, 485 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir.1987) ("[O]ne who does not come to work cannot perform any of his job functions, essential or otherwise.").

memorandum, at 14.  The plaintiff wholly dismisses this argument, and focuses

instead on whether she needed an accommodation and whether the same was made

by defendant.[12]  Specifically, the plaintiff asserts the defendant should have

provided her a workplace that was "reasonably free of offensive odors."

Plaintiff's response, at 18-19.  However, the plaintiff never requested any such

accommodation.  Rather, she requested to be moved away from Estelle, and she

was.  When asked during her deposition if she ever complained about Estelle

coming around her, the plaintiff stated she did not.  Plaintiff depo. at 159, 165.

    To show that she was a "qualified individual," the plaintiff must establish

that she could perform the essential functions of her job with or without

 reasonable accommodation. *School Bd. of Nassau County v. Arline*, 480 U.S. 273,

287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987).  Plaintiff concedes

that she could not perform the essential functions of her job without reasonable

accommodation. The issues before the court on the plaintiff's discrimination claim

are therefore twofold, those being (1) whether the needed accommodation is

reasonable, and (2) was that accommodation ever requested by the plaintiff. *See*

*e.g., Shwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-1219 (11th Cir.2008).

---

[12]The plaintiff disputes that *McDonnell Douglas* provides the framework for this case, but
then discusses the elements of a *prima facie* case of discrimination for failure to accommodate.
*See* plaintiff's memorandum at 17-18.

In spite of the record establishing that each of the plaintiff's requests for accommodations were honored, the plaintiff argues that her need for accommodations were not met. The plaintiff argues that "despite defendant's efforts to move plaintiff further away from Mr. Estelle, plaintiff continued to experience an exacerbation of her condition by exposure to his strong cologne in her work area.  Thus moving plaintiff did not accomplish an accommodation." Plaintiff's response, at 19.  However, it is the plaintiff's burden to request reasonable accommodations.  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir.1999); *Wood v. President and Trustees of Spring Hill College in the City of Mobile*, 978 F.2d 1214, 1222 (11th Cir.1992)("We have previously held that a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.").  The Eleventh Circuit has relied on *Wood* to state that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made," and that the same is "binding precedent for purposes of defining the scope of the duty to provide a reasonable accommodation under the ADA." *Gaston*,  167 F.3d at 1363-1364.  *See also* 29 C.F.R. pt. 1630 App. ("[i]n general ... it is the responsibility of the individual with a disability to inform the employer

16

that an accommodation is needed").  In the facts before this court, the plaintiff

repeatedly requested to be moved, and she was.[13]

The plaintiff argues that she was discriminated against in being forced to

endure Estelle's cologne, but she offers no evidence that she specifically requested

Estelle be kept wholly away from her all day long, that she ever requested Estelle

to stop wearing the offending cologne, or that she ever informed her manager or

supervisor that Estelle was intentionally harassing her by purposely finding

someone to speak with in the same general area where plaintiff was located.[14]

---

[13]The plaintiff argues that "[a]n accommodation which does not allow the employee to work despite his or her disability does not satisfy defendant's obligation if a reasonable accommodation was available which would have done so."  Plaintiff's response, at 19.  The plaintiff offers no support for this assertion.  However, even assuming the same to be the law, plaintiff's only evidence of asking defendant to make Estelle wear less cologne or to institute a fragrance policy is her own affidavit, which directly conflicts with her very specific, earlier deposition.  As noted by the defendant, a party cannot defeat a motion for summary judgment by submitting an affidavit to contravene that party's previous sworn testimony.  *Van T. Junkins & Assocs. v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984).  See also *Akins v. Fulton County, Ga.*, 278 Fed.Appx. 964, 968 (11th Cir.2008), stating:

> Recognizing that parties may try to escape summary judgment by using affidavits to create issues of fact where none existed, we have allowed an affidavit to be disregarded as a "sham" if it flatly contradicts earlier deposition testimony in a manner that cannot be explained. *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir.1984). Under the sham affidavit concept, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

[14]The Eleventh Circuit has noted that "the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any

Another district court has noted that

> Courts have found mandatory scent-free workplace policies impose
> an undue financial and administrative burden on employers, because
> they are very difficult to enforce. *See Kaufmann*, 2006 WL 1371185,
> at *12-13; see also *McDonald v. Potter*, 2007 WL 2300332, *41-45,
> (E.D.Tenn. Aug.7, 2007), *aff'd*, 285 Fed. Appx. 260, 261 (6th
> Cir.2008). Unlike a dress code, enforcing a scent-free policy requires
> a closer inspection than may be considered suitable in the workplace.
> *See McDonald*, 2007 WL2300332, * 45;  *Hunt v. St. Peter School*,
> 963 F.Supp. 843, 852 (W.D.Mo.1997). Reasonable accommodations
> do not encompass proposed solutions which would violate the rights
> of other employees, *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th
>  Cir.1995), such as restricting their right to wear fragrances.

*Heaser v. AllianceOne Receivables Management, Inc*., 2009 WL 205209, 3

(D.Minn.2009).  *See also McDonald v. Potter*, 2007 WL 2300332

(E.D.Tenn.2007) (examining cases concerning fragrance issues at work places and

noting a fragrance free work environment requires employer to infringe on

coworkers' rights to wear scents and to engage in the "burdensome and unseemly

task" of enforcing such a prohibition); *Kaufmann v. GMAC Mortgage Corp*., 2006

WL 1371185 (E.D.Pa.2006) (stating "there is only so much avoidance that can be

done before an employer would essentially be providing a bubble for an employee

---

manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117
F.3d 1278, 1285 (11th Cir.1997 (quoting *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 947
(N.D.Ga.1995)). The word "reasonable" would be rendered superfluous "if employers were
required in every instance to provide employees 'the maximum accommodation or every
conceivable accommodation possible.'" *Id.* (quoting *Lewis*, 908 F.Supp. at 947). Thus, an
employee may expect, and is entitled to receive under the law, a reasonable accommodation, but
not the accommodation of his choice.

to work in" (citation omitted)).

As such, even assuming the plaintiff has a disability, and assuming she meets the definition of a "qualified individual," the court can find no evidence that the plaintiff was discriminated against, in the form of being forced to endure Estelle's aroma, because of her disability. She therefore fails to establish a *prima facie* case of discrimination under the ADA.

## B. Retaliation

In addition to alleging disability discrimination, the plaintiff asserts an ADA retaliation claim.[15] The ADA states that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (2006). To state a prima facie claim for ADA retaliation, a plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment decision; and (3) that a

---

[15]The defendant asserts that the plaintiff failed to raise any such claim in her initial EEOC charge or her amended EEOC charge. Defendant's memorandum at 20-21. The plaintiff responds that it is a claim which can reasonably be expected to grow out of the charge of discrimination. Plaintiff's response at 22-23. The court does find that the plaintiff did not raise this claim in either of her EEOC charges, but also finds that it is based on the same facts as plaintiff's hostile environment claim. For the sake of completeness, the court has elected to consider this claim on its merits.

19

causal link existed between the protected activity and the adverse action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997). A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68, 126 S.Ct. at 2415 (internal quotation & citation omitted). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. *Crawford v. City of Fairbum*, 482 F.3d 1305, 1308 (11th Cir.2007). If the employer articulates such a reason for its treatment of the plaintiff, then the burden returns to the plaintiff to produce evidence sufficient to raise a genuine issue of material fact with regard to whether the employer's proffered reason for the adverse action was pretextual. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1103-04 (11th Cir.2001).

Here, the plaintiff asserts her requests for accommodation were protected action in which she engaged.  The plaintiff asserts that "[t]he adverse employment action was Mr. Estelle's acts of exposing plaintiff unnecessarily to his cologne after she complained about him and after she was moved in an effort to distance her from him.  The continued exposure of plaintiff to the cologne led to her incurring numerous absences.... Her numerous absences led to her termination...." Plaintiff's response, at 22.  This misses the mark.  Rather, the issue before the court is whether there is any causal connection between the plaintiff's request for accommodations and her termination.

Although plaintiff accuses Estelle of retaliating against her for her complaints about him, this ignores that Estelle was a co-employee of plaintiff, incapable of taking adverse employment action against her.  The plaintiff asserts that the defendant should be liable for Estelle's retaliatory behavior to the extent it ratified the same.  However, the plaintiff offers no evidence of any activity by the defendant which ratified Estelle's actions of standing near the plaintiff.  By her own testimony, she never informed a supervisor that he was intentionally lurking near her desk.[16]  Plaintiff depo. at 159-160, 165.

---

[16]Plaintiff's confusion regarding her burden to establish a prima facie case is evident from the plaintiff's argument that

Because the plaintiff has failed to allege any adverse employment action by the defendant, the retaliation claim must fail, assuming it was properly brought at all.

## C. Hostile Environment Harassment

The plaintiff asserts that she was subjected to a work environment which was hostile to her disability.  Plaintiff's response at 20.  The plaintiff and defendant agree that the appropriate standard by which this court should analyze this claim is the same as the Title VII standard for hostile work environment. Defendant's memorandum at 22; plaintiff's response at 20.  The Eleventh Circuit has implicitly approved the use of such a standard in disability harassment claims. *See Burgos v. Chertoff,* 274 Fed.Appx. 839, 842 (11th Cir.2008), holding that

---

Mr. Estelle does not establish a legitimate non-retaliatory reason for frequenting plaintiff's work area.  Instead he denies that he committed the acts alleged.  This creates a fact issue for the jury as to whether or not he frequented plaintiff's work area.  His denial, however, does not shift the burden to plaintiff to show that his stated reason is pretext.  Similarly, defendant's managers do not offer a legitimate, non-retaliatory reason for ratifying Mr. Estelle's conduct.

Plaintiff's response at 22.  The court observes that Mr. Estelle is not the defendant and thus has no burden to establish a legitimate non-retaliatory reason for his actions.  His denial of frequenting the plaintiff's work area fails to create a genuine issue of material fact for the simple reason that, in the light most favorable to the plaintiff, the evidence supports plaintiff's allegations that Estelle continued to frequent her area.  Assuming the same to be true, the plaintiff still fails to offer any evidence that defendant's managers ratified Estelle's conduct.  The plaintiff asserts by way of her affidavit that her supervisor had to have known both that Estelle was repeatedly near the plaintiff and that his cologne was causing her to have ongoing migraines. She offers no admissible evidence in support of such assertions.

> The employee has the burden of proving a hostile work environment. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir.1995). To establish a prima facie case for a hostile work environment claim, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability.

*Id.* at 842; citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002).  *See also Woodruff v. School Bd. of Seminole County, Fla.*, 304 Fed. Appx.  795, 799 (11th Cir.2008) ("Assuming that such a claim is cognizable, we conclude from the record that the district court properly found that Woodruff failed to present a prima facie case of hostile work environment under the ADA...."); *Hawkins v. Counseling Associates, Inc.,*  504 F.Supp.2d 419, 428-429 (E.D.Ark.2007); citing *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th  Cir.2002) ("As the Eighth Circuit has done, this Court will assume that a disability-based cause of action for discrimination under a hostile work environment theory exists"); *Schwertfager v. City of Boynton Beach,*  42 F.Supp.2d 1347, 1366 (S.D.Fla.1999) ("Those courts which have proceeded under the assumption that an ADA hostile environment claim could be actionable, have analyzed the plaintiffs' claims under the same rubric used in assessing hostile work environment claims brought

pursuant to Title VII").

Assuming, without deciding, that the plaintiff could establish the other elements of such a claim, this claim must fail on the same grounds as the retaliation claim, namely, there is no basis for holding the employer liable. Additionally, the court is of the opinion that Estelle's actions were such that they could not create an objectively and subjectively hostile work environment. In order to be actionable, the environment must be both objectively offensive-one that a reasonable person would find hostile or abusive- and subjectively offensive-one that the victim in fact did perceive to be so. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-371, 126 L.Ed.2d 295 (1993). The demanding standards for judging abusive working environments were designed to prevent civil rights statutes from becoming "general civility code[s]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998).  The court is of the opinion that merely wearing cologne near someone sensitive to it, even in quantities offensive to the majority of individuals, is not capable of consideration as "severe," "physically threatening," or "humiliating" such that its application could alter the terms and conditions of employment.  *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.  *See also Mont-Ros v. City of West Miami,*  111 F.Supp.2d 1338, 1362 (S.D.Fla.2000) (To be actionable the

24

harassment must be so severe and pervasive as to "have the purpose or effect of unreasonably interfering with [Plaintiff's] work performance or creating an intimidating, hostile or offensive environment.").

## V. CONCLUSION

In consideration of the foregoing, having found no genuine issues of material fact remain in this case and that summary judgment in favor of the defendant and against the plaintiff is due to be granted, the court shall enter an appropriate order.

**DONE** and **ORDERED** this the 5th day of May, 2010.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE